ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| BES Construction, LLC | )   ASBCA No. 62175 |
| | ) |
| Under Contract No. FA4418-12-C-0023 | ) |

APPEARANCES FOR THE APPELLANT:   Todd A. Jones, Esq.
   Raleigh, NC

   Edward P. Kendall, Esq.
   Montgomery, AL

APPEARANCES FOR THE GOVERNMENT:   Jeffrey P. Hildebrant, Esq.
   Deputy Chief Trial Attorney
   Lawrence M. Anderson, Esq.
   Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

Appellant, BES Construction, LLC, seeks additional compensation related to its construction of a visitor center at a military base in South Carolina.

FINDINGS OF FACT

Much of the following is drawn from the parties' apparent agreement that certain facts are not in dispute (app. br. at 2-8; gov't br. at 1-12). On September 28, 2012, the parties contracted for BES to construct a visitor center at a military base in Goose Creek, South Carolina (R4, tab 8 at 1-2). The contract provides that "[t]he Notice to Proceed will be issued within 45 days of award," and that BES "complete the entire work ready for use not later than 270 calendar days" (*id.* at 1). On or around October 2, 2012, the government received a bid protest from a disappointed bidder (app. br. ¶ 7; gov't br. ¶ 7). On October 3, 2012, the government directed BES to "[c]ease all work associated with the Construct Visitors Center contract" pending the outcome of the protest (*see* R4, tab 10). The award protest was resolved on December 6, 2012 (app. br. ¶ 10; gov't br. ¶ 10). On January 8, 2013[1], the government issued to BES a Notice to Proceed (R4,

---

[1] The record reflects that the Notice to Proceed was dated January 8, 2012 (R4, tab 1). However, based upon the parties' recitation of the facts and other documents in the record, we conclude that the Notice to Proceed was actually issued on January 8, 2013.

tab 1).  On July 12, 2013, BES requested of the government "a contract time extension due to excessive rainfall for the Months of February through June" 2013, stating that:

> There was measurable rainfall for 33 days out of 181 calendar days for January through June including 22 Days in June with a total accumulation that was 7.22 inches (June total) above normal as measured at the NOAA site in Goose Creek.  We are asking for 46 days of calendar days of extension time to cover days lost due to weather.
>
> . . .
>
> According to Weather underground.com (NOAA recording Data) there was rainfall from January 1st, 2013 through June 30, 2013 of 36.75".  The normal rainfall for this same period is 21.96".  Therefore there was a surplus of 14.79" of rain since the project started.

(R4, tab 13 at 1-2)  On August 8, 2013, the parties entered into Modification No. P0001, which extended the period of performance "by 70 days due to [the award] protest and a 20 day PoP extension was given due to extreme inclement weather in the months of Mar, Jun, and July," from August 8, 2013, to November 6, 2013; the modification states that "[t]his is a no cost modification," and that "[a]ll other Terms and Conditions remain unchanged" (R4, tab 15).

On August 22, 2013, BES submitted Submittal 48 related to the storefront windows (app. br. ¶ 27; gov't br. ¶ 27).  Submittal 48 was partially approved on September 3, 2013; the submittal was disapproved per a handwritten comment stating "08 41 13, Must provide PE calcs per 1.3.2 structural" (app. br. ¶ 28; gov't br. ¶ 28).  The government omitted or failed to provide the parameters for the calculation in the specifications (app. br. ¶ 29; gov't br. ¶ 29).  Fourteen days later, on September 17, 2013, BES received the design parameter of 1 psi for the storefront windows from the government (app. br. ¶ 30; gov't br. ¶ 30).  Upon receipt of the design parameter for the storefront windows, BES resubmitted Submittal 48 as Submittal 48A on September 17, 2013, and final approval was received on September 18, 2013 (app. br. ¶ 31; gov't br. ¶ 31).  Following approval, the subcontractor reapplied to put the storefront windows into production which took another seven days (app. br. ¶ 31; gov't br. ¶ 31).

During October 2013, the government delayed payment to BES as a result of a government shutdown (app. br. ¶ 48; gov't br. ¶ 48).  On November 6, 2013, BES received Modification No. P0002 which extended BES's contract completion date by twenty-one days to account for the government shutdown (app. br. ¶ 50; gov't br. ¶ 50).

2

Modification No. P0002 is bilateral, and provides that "[t]his is a no cost modification" (R4, tab 21 at 1).

The scope of work under the contract included "electrical systems" (app. br. ¶ 36; gov't br. ¶ 36). On October 24, 2013, BES submitted Request for Information #43, requesting clarification of the specifications related to the primary power supply (app. br. ¶ 37; gov't br. ¶ 37). On October 29, 2013, the contracting officer responded indicating that specifications omitted the neutral conductor and incorrectly provided for a #4 ground wire where it should have been a #2 ground wire (app. br. ¶ 38; gov't br. ¶ 38). BES provided the neutral conductor and #2 ground wire which were required to complete the electrical service under the contract (app. br. ¶ 39; gov't br. ¶ 39). On November 27, 2013, BES notified the contracting officer that it considered the neutral conductor and ground wire to constitute a change order (app. br. ¶ 41; gov't br. ¶ 41). The November 27, 2013 notice stated the date, circumstances, and source of the change order (app. br. ¶ 42; gov't br. ¶ 42). BES incurred actual costs in the amount of $1,867 (including its markups) for the change order (app. br. 43; gov't br. ¶ 43).

During performance of the project, BES interpreted specification 2.3.6.1 entitled "Field Painting" to require BES to provide and install factory primed, field painted doors (app. br. ¶ 45; gov't br. ¶ 45). The government questioned BES's interpretation of this specification, and extensive discussions ensued pertaining to the required finish for the wooden doors on the project (app. br. ¶ 46; gov't br. ¶ 46).

On February 20, 2014, BES submitted to the government a "request[] [for] authorization to make the following changes in the project: . . . Color change for stucco" (R4, tab 12 at 2). On February 28, 2014[2], the contracting officer denied BES's request for such a change order (*see* app. br. ¶ 57; gov't br. ¶ 57; R4, tab 12 at 1).

On May 23, 2019, BES presented to the contracting officer a certified claim seeking $623,205.34 in compensation for alleged changes and delays (*see* app. br. ¶ 58; gov't br. ¶ 58; R4, tab 23 at 1). On June 11, 2019, the contracting officer issued a final decision granting BES $1,867 in direct costs (for the neutral conductor and changed ground wire), but denying the remainder of BES's claim (app. br. ¶ 60; gov't br. ¶ 60).

The record includes the affidavit of William Walter Bolton, the sole owner, member, and operator of BES, who states:

> Available actual cost data (particularly the general conditions and certain direct labor costs) divided over the performance period for the Contract shows that daily rate of extended

---

[2] The correspondence from the contracting officer was erroneously dated February 28, 2013 (R4, tab 12 at 1).

3

overhead was $967.61 / day. Attached hereto as Exhibit "A" is a true and accurate copy of the calculation of *extended overhead* based on the available cost data.

This number does not account for all direct labor costs for the Project, all supervision costs for the Project, *any field office overhead for the Project, or any allocation for home office overhead.*

Accordingly, BES estimates its daily rate of damages for Government caused delay exceeds $1,300.00 / day.

(Bolton aff. ¶¶ 1, 18-20 (emphasis added)) The Exhibit A that Mr. Bolton cites consists of a "Breakdown of Daily Overhead Rate" that calculates a "daily rate" of $967.61 (Bolton aff. at ¶ 18, ex. A at 1).

The record also includes the affidavit of John Buziak, BES's delay expert (app. br. at 1; Buziak aff.). Mr. Buziak states:

Had the contract not been protested BES would have started demolition and site work in the final quarter of 2012. During this period the Charleston area experienced normal rain fall; 1.06 inches for October, 2.2 inches for November and 3.56 inches for December. The protest of the award pushes this work in to the Spring. This changes the manner in which weather is treated in going forward. The delay pushed the demolition, site work and shell into a period of exceptionally adverse weather. In the spring there were multiple dates where rainfall was recorded in a day that matched or exceeded a month's worth of rain in the final quarter of 2012. This makes weather impacts compensable, both additional effort and extended overhead.

Going forward from Notice to Proceed weather ways were included in the schedule. Exhibit 3 indicates the state of the project at ground breaking. By this point BES had recovered 27 days on the critical path, primarily by accelerating the submittal May 13, 2021 process and completing the demolition earlier than in the baseline. The adverse weather had started in February. But demolition activities are typically less impacted by rain. Exhibit 4 shows the state of the project where BES has reached a point where the Critical

4

Path activities are no longer susceptible to weather delays. The negative float at this point compared with state of the project at ground breaking indicates the impact of the weather on the project was 123 days. The driving factors in the delay included the saturated ground preventing the pouring of concrete. The contractor took exceptional measures to mitigate the effects of the saturated soil including "liming" the soil and covering the enclosed area with a heavy duty tarp once the trusses were in place. This permitted the interior rough in to go forward. In another instance heavy rains necessitated the rework of footings in the middle of July. A stop work order by a Government representative in late June was concurrent with the ongoing weather delay. All of the actions taken by BES is reimbursable. In order to account for the net affects [sic] of weather and mitigation of the delay accomplished by BES we subtract the previously identified delay from the total negative float in Exhibit 4. This yields a value of 96 days of additional delay attributable to the compensable weather impact.

(Buziak aff., ex. B at 3-4) Nowhere in that report does Mr. Buziak identify store front windows, wooden doors, or neutral conductors and ground wires as delay issues (*see* Buziak aff., ex. B).

DECISION

### 1. Changes

#### a. Electrical scope change

The parties agree that BES is entitled to $1,897 for an alleged change to the scope of electrical work, plus interest pursuant to the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, from May 23, 2019 (app. br. at 9; gov't br. at 14, 29). We award that amount.

#### b. Change of color of stucco

BES requests $6,101.45 in alleged direct costs and $9,100 in alleged delay costs for an alleged government change to the color of stucco from buff to ivory (app. br. at 10, 15-16). However, the government points (gov't br. at 27) to a February 20, 2014 request that BES made of the government for "authorization to make the following changes," specifically, "[c]olor change for stucco." BES does not address that request. We find

5

that BES, not the government, requested the change to the color of stucco. Accordingly, BES's request for additional compensation for a change to the color of stucco is denied.

### 2. Delays

#### a. Delay in issuing Notice to Proceed after protest of contract award

BES seeks $110,500 for an alleged 85-day project delay caused by the issuance of the notice to proceed only after the resolution of a protest of the award of the contract to BES (app. br. at 13). That $1,300 figure appears to consist, at least in part, of extended overhead. BES states that "[t]he difference between BES's claimed daily rate of extended overhead ($1,300.00) and the daily rate calculated using *available* actual cost data ($967.61) is $332.39" (app. br. at 11(emphasis in original)). In addition, BES cites in support of that $1,300 per day figure the affidavit of Mr. Bolton (app. br. ¶ 64), who states (emphasis added):

> Available actual cost data (particularly the general conditions and certain direct labor costs) divided over the performance period for the Contract shows that daily rate of extended overhead was $967.61 / day. Attached hereto as Exhibit "A" is a true and accurate copy of the calculation of *extended overhead* based on the available cost data.
>
> This number does not account for all direct labor costs for the Project, all supervision costs for the Project, *any field office overhead for the Project, or any allocation for home office overhead*.
>
> Accordingly, BES estimates its daily rate of damages for Government caused delay exceeds $1,300.00 / day.

(Bolton aff. ¶¶ 18-20) The exhibit A that Mr. Bolton cites consists of a "Breakdown of Daily Overhead Rate" that calculates a "daily rate" of $967.61. Where the government delays the issuance of a notice to proceed, one of the things the contractor must prove in order to recover allegedly unabsorbed overhead is that additional contracts were unavailable during the delay when payment for the suspended contract activity would have supported such overhead. *See Interstate Gen. Gov't Contractors, Inc. v. West*, 12 F.3d 1053, 1057 (Fed. Cir. 1993). As the government points out (gov't br. at 18), despite attempting to recover allegedly unabsorbed overhead caused by government delay, BES does not address, much less satisfy, that requirement.

In addition, after awarding the contract on September 28, 2012, the government received a bid protest on October 2, 2012, and, the next day, issued to BES a suspension

6

of work notice. The award protest was resolved on December 6, 2012, and on January 8, 2013, the government issued to BES the Notice to Proceed. On August 8, 2013, the parties entered into Modification No. P0001, which, among other things, extended the period of performance "by 70 days due to [the award] protest," and recited that the modification was "a no-cost modification." Because Modification No. P0001 is a no cost modification, BES is not entitled to any additional compensation for the delay in issuance of the Notice to Proceed. *See Jimenez, Inc.*, ASBCA No. 52825, 01-1 BCA ¶ 31,294 at 154,502 (citing cases); *Loral Corp., Def. Sys. Div.-Akron*, ASBCA No. 37627, 92-1 BCA ¶ 24,661 at 123,025.

For these reasons, BES's request for $110,500 for an alleged 85-day project delay caused by the timing of the issuance of the notice to proceed is denied.

b. *Weather*

BES requests $124,800 for an alleged 96-day, weather related, project delay in the Spring of 2013 also allegedly caused by the award protest (app. br. at 13-15). BES states:

> Through no fault of BES, *as a result of the Award protest*, BES was required to start demolition and site work in the Spring of 2013 instead of the fall of 2012. The rainfall in Charleston for the Fall of 2012 (October, November, and December) was a total of 6.82 inches. By contrast, in the Spring of 2013 there were multiple days where recorded daily rainfall exceeded the rainfall for the entire month in the Fall of 2012. In fact, the rainfall in the Spring was so heavy it saturated the ground such that it was impossible for work to proceed even on days when there was no rainfall. For instance, because of the sheer magnitude of rain, the ground was not dry enough for BES to obtain sufficient compaction to pour the concrete slab. This required BES to take extraordinary measures to mitigate the effect of the weather, particularly the saturated soil, leading to a ninety-six (96)-day delay in the Project schedule. The delays would not have occurred if the demolition, site work, and the building shell would have started in the Fall of 2012 during which the weather was more favorable and drier. *Because the Award Protest, which was the fault of the Government, pushed the Project start unto a period of unfavorable weather, the weather delay is compensable.*

(App. br. at 13 (emphasis added, internal citations omitted))

7

Although BES points to the award protest as the reason it is due additional compensation because of rain, the parties signed a bilateral modification, Modification No. P0001, which extends the contract completion date by 70 days "for the Award Protest," and recites that Modification No. P0001 is "a no-cost modification" (R4, tab 15 at 1). Because Modification No. P0001 is a no cost modification, BES is not entitled to any additional compensation for having to begin work in Spring 2013, as opposed to Fall 2012, even if the former turned out to be rainier than the latter. *See Jimenez*, 01-1 BCA ¶ 31,294 at 154,502; *Loral*, 92-1 BCA ¶ 24,661 at 123,025.

Apparently anticipating that conclusion, BES argues in the alternative that "the weather encountered by BES is compensable because it was unusually severe":

> [A]ccording to the [National Oceanic and Atmospheric Administration], normal rainfall for Charleston between January 1 and June 30, is 21.96 inches. However, *between January 1 and June 30 of 2013, Charleston received 36.75 inches of rain*. This represents a surplus of 14.79 inches. Therefore, the weather in Charleston during BES's performance was unusually severe when compared to prior years. Because the weather in Charleston during BES's performance was unusually severe, the weather delay is compensable.

(App. br. at 14 (emphasis added, internal citations and footnote omitted)) Again, however, BES ignores that in their no-cost, August 2013, Modification No. P0001, the parties agreed to a 20-day extension of the contract completion date "due to extreme inclement weather in the months of Mar, Jun, and July," and that Modification No. P0001 is a no cost modification. Because Modification No. P0001 is a no cost modification, BES is not entitled to any additional compensation for inclement weather (including rain) in March or June 2103. *See Jimenez*, 01-1 BCA ¶ 31,294 at 154,502; *Loral*, 92-1 BCA ¶ 24,661 at 123,025. And in its briefing, BES makes no effort to identify any of the 76 allegedly severe weather days "between January 1 and June 30 of 2013" that are not covered by the 20-day, weather-related time extension in Modification No. P0001 (specifically, presumably, days in January, February, April, and May 2013), and for which BES currently seeks additional compensation. Consequently, we find that BES fails to prove its case with regard to any additional compensation due to unusually severe weather in Spring 2013. *Cf. GSC Constr., Inc.*, ASBCA Nos. 59402, 59601, 21-1 BCA ¶ 37,751 at 183,220 (finding that contractor had not proven that damage to panels for which the government was responsible delayed the completion date of the project where "it is not clear from the testimony if these are the same damaged panels to which [contractor] is referring and the record and briefing is inadequate for the Board to sort out which panels were damaged by which contractor or event."); *appealed* Mar. 23, 2021.

For these reasons, BES's request for $124,800 for an alleged 96-day project delay caused by rain in the Spring of 2013 is denied.

### c. Government shutdown

BES requests $27,300 for an alleged 21-day project delay caused by the government's delay in payment to BES arising from the October 2013 shutdown in government operations (app. br. at 15). The parties agree that "[d]uring October 2013, the Government delayed payment to BES as a result of a Government shutdown," and that "[o]n November 6, 2013, BES received Modification No. P0002 which extended BES's contract completion date by twenty-one (21) days to account for a Government shutdown." However, Modification No. P0002, which is bilateral, provides that "[t]his is a no cost modification." Because Modification No. P0002 is a no cost modification, BES is not entitled to any additional compensation for the delay in payment caused by the 2013 shutdown in government operations. *See Jimenez*, 01-1 BCA ¶ 31,294 at 154,502; *Loral*, 92-1 BCA ¶ 24,661 at 123,025.

### d. Storefront window, wooden door, and neutral conductor and ground wire

BES requests (1) $27,300 for an alleged 21-day project delay caused by specifications governing storefront windows; (2) $27,300 for an alleged 21-day project delay caused by specifications governing wooden doors; and (3) $9,100 for an alleged 7-day project delay caused by specifications regarding a neutral conductor and a ground wire (app. br. at 16-18). BES has the burden here: to prevail on its claims for additional costs allegedly incurred because of the late completion of a fixed-price government construction contract, a contractor must show that the government's actions affected activities on the critical path, and where the delays of the government and the contractor are concurrent, the contractor must establish its delay apart from that attributable to the government. *BES Constr., LLC*, ASBCA No. 60608, 19-1 BCA ¶ 37,455 at 181,989. BES cites the affidavits of Mr. Bolton and Carol Denise Bradley in support of its allegations of such delay to the contract work (app. br. at 5-7, 16-18). However, BES has not demonstrated that either of those individuals is a delay expert. In addition, as the government points out (gov't br. at 28-29), nowhere in the report of BES's delay expert are the issues of store front windows, wooden doors, or neutral conductors and ground wires identified as delay issues. For these reasons, BES does not demonstrate its entitlement to delay damages for these issues. Consequently, its request for compensation for those issues is denied.

## CONCLUSION

We find it unnecessary to address the parties' other arguments. The appeal is sustained with regard to the electrical scope change in the amount of $1,897, plus interest pursuant to 41 U.S.C. § 7109 for the period beginning May 23, 2019, until the date of payment. The appeal is otherwise denied.

Dated: November 9, 2021

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62175, Appeal of BES Construction, LLC, rendered in conformance with the Board's Charter.

Dated: November 10, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

10